UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**ADAM WINTHER**,                      Case No. 3:14-CV-01323-KI

            Plaintiff,                    OPINION AND ORDER

    v.

**COMMISSIONER OF SOCIAL SECURITY**,

            Defendant.

    Alan R. Unkeles
    3000 NW Stucki Place No. 230
    Hillsboro, OR 97124

            Attorney for Plaintiff

    Billy J. Williams
    Acting United States Attorney
    District of Oregon
    Janice E. Hebert
    Assistant United States Attorney
    1000 SW Third Ave., Suite 600
    Portland, OR 97201-2902

Page 1 - OPINION AND ORDER

Jeffrey R. McClain
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

   Attorneys for Defendant

KING, Judge:

Plaintiff Adam Winther brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

Winther filed an application for a period of disability and DIB on March 30, 2006, alleging disability beginning February 1, 2006. The application was denied initially and upon reconsideration. After a hearing and a supplemental hearing, an Administrative Law Judge ("ALJ") issued a decision on September 25, 2009 finding Winther not disabled. Winther challenged that decision and, on October 31, 2011, pursuant to a stipulation of the parties, the U.S. District Court for the District of Oregon remanded the action to the ALJ for further administrative proceedings. The order directed the ALJ to reevaluate the medical evidence and consider the VA disability rating.

After a second hearing at which a medical expert testified, the ALJ issued a decision on March 15, 2013 finding Winther not disabled within the meaning of the Act and therefore not

entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review it on June 16, 2014.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are

Page 3 - OPINION AND ORDER

denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

**STANDARD OF REVIEW**

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

**THE ALJ'S DECISION**

The ALJ found Winther had the following severe impairments during the relevant period (February 1, 2006 through his date last insured of June 30, 2011): irritable bowel syndrome ("IBS"); fibromyalgia/chronic pain syndrome; sleep apnea secondary to obesity; and an adjustment disorder with mixed anxiety and depressed mood. The ALJ found these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Given these impairments the ALJ concluded Winther had the following residual functional capacity: Winther could perform light work, except that he should have ready access to a bathroom; he should not work around hazards such as heights or machinery; he could sustain concentration, persistence, and pace for simple, routine-type work; he could lift and carry up to ten pounds frequently and up to 20 pounds occasionally; and he could sit, stand and walk up to six hours each in an eight-hour workday with normal breaks.

The ALJ believed Winther could perform his past relevant work as a security guard. Additionally, Winther could perform other work in the national economy, such as assembler, silver wrapper, and price marker.

**FACTS**

Winther, a man not quite 30 years old on the date of his alleged disability onset, has a high school education and served four years in the U.S. Navy. He has worked as an aircraft mechanic, aircraft welder, flight line aircraft servicer, salesman at a music store, music instrument repairman, and a security guard. Winther moved around after the U.S. Navy discharged him, living in Minnesota, Wisconsin, Florida and finally Oregon.

Winther received treatment from the Veterans Health Administration. Along with care for IBS symptoms, vertigo, testicular pain, sleep apnea, depression, and pain in his knee, neck, back, and feet, one doctor thought Winther had neurological symptoms that were consistent with exposure to manganese. The VA awarded Winther 30% disability for his IBS, effective July 2003. Sometime in 2004, the VA also identified Winther's mood disorder as service connected.

On February 28, 2006, William A. Schmitt, Ph.D., after interviewing Winther and reviewing his medical records, concluded Winther's depressive disorder had deteriorated since his last Compensation and Pension examination. Dr. Schmitt diagnosed both depression and anxiety. As a result, Winther received an increase in his VA benefit.

On October 2, 2006, Steven Coenen, M.D., opined that Winther's symptoms of fatigue, memory loss, obesity, myalgias, sexual dysfunction, chronic anxiety and tremors were due to his exposure to manganese while on active duty with the U.S. Navy. MRIs of his brain, abdomen, and chest were normal.

Jennifer Backman, D.O., Winther's primary care provider in Oregon, treated Winther initially for chest pain in August 2008. She continued to treat his sleep problems, scrotal/prostate pain, fatigue, and back pain through June 2009. Dr. Backman adopted Dr. Coenen's diagnosis of manganese poisoning and she opined in an April 15, 2009 letter that Winther was fully disabled and unable to work as a result of this condition.

Winther testified at the first hearing in July 2009 that he could no longer work because of the pain in his lower back and leg. He thought he could stand for about 20 minutes but then he had to lie down on the floor to accommodate the swelling in his ankles and feet. He thought he could not return to music sales because of the need to interact with people and his fear that he might lose his grip and drop expensive instruments. He complained about memory problems, problems with his vision, headaches, joint pain, hormone imbalances, and trouble sleeping. He also reported feeling tired all the time. He said he spent his days checking his e-mail, watching television until his back started hurting, lying on the floor, putting some dishes in the dishwasher, and then doing some muscle exercises for about two hours. He did not nap during the day. At 5'6", Winther weighed 280 pounds which he said was down from 330 pounds the previous year. He believed at least some of his symptoms were caused by manganese poisoning as a result of welding work he performed in the Navy.

Before issuing his opinion, the ALJ sent Winther for a consultative examination with Cheryl S. Brischetto, Ph.D., on August 11, 2009. Dr. Brischetto completed neuropsychological screening and found Winther to be cooperative in the interview, but observed his effort was variable on the formal testing and may have under-reflected his true abilities. His I.Q. was low average. Dr. Brischetto diagnosed adjustment disorder with mixed anxiety and depressed mood,

as well as cognitive disorder NOS.  She included a rule out diagnosis of dependent personality features.  Dr. Brischetto thought Winther would have no trouble understanding, remembering, and carrying out simple instructions, and could even carry out complex instructions with occasional repetition.  Although Winther performed poorly on formal memory testing, she thought his test scores under-reflected his true capacity.  Finally, she noted he could appropriately interact in social situations, although he would perform better around fewer people.

In response to Winther's attorney's inquiry on September 2, 2009, Dr. Backman opined that Winther's "fatigue, pain, numbness, [and] memory loss" limited his ability to work and would likely cause two or more absences from work per month.  Tr. 930.  In a further inquiry, dated September 9, 2009, Dr. Backman answered "yes" to Winther's attorney's question whether Winther's pain or other symptoms would cause Winther's absence from work for four to eight hours per week.  Tr. 931.

After the stipulated remand back to the agency, the ALJ held a second hearing in February 2013 at which Winther testified to weighing 245 pounds; he had lost weight by exercising on a treadmill, on a recumbent bike, and by engaging in light strength training.  Afterward, he felt fatigued and in pain.  He tried to exercise 30 minutes two or three days a week.  The testifying medical expert William Rack, M.D., stated he could not rule in or rule out manganese poisoning as there was insufficient information in the record.  He noted the absence of any medical records from 1996 to 2000, as well as the absence of any biochemical studies; in addition, Winther's symptoms of fatigue, irritability, slowness of motion, etc. could be the result of some other illness.

Page 8 - OPINION AND ORDER

On February 5, 2013, the VA granted Winther's claim of service-connected disability due to manganese poisoning, to include chronic fatigue, tremors, and myalgias. The Veterans Law Judge for the Board of Veterans' Appeals applied the "benefit of the doubt rule" given that the evidence was equally supportive of either outcome. Tr. 1200. As of February 26, 2014, Winther's service-connected disability was deemed 80 percent, but it was payable at 100 percent because he was deemed unemployable.

## DISCUSSION

Winther raises issues with the ALJ's treatment of the medical and lay evidence.

I.   Lay Testimony

Winther argues the ALJ improperly addressed his wife's testimony. Mrs. Winther completed a third-party function report in which she stated she works 40 hours a week, but spends the rest of her time with Winther. She prepared most meals and maintained the apartment most days, took care of the cats, and reminded Winther to take his medications. On a good day, Winther accompanied his wife to the grocery store once a week or so for an hour or two, but on a bad day "he [was] unable to do much more than sit in a chair listening to music." Tr. 226.[1] He could do some laundry–although just the loading–and would sometimes load the dishwasher. He did not have any hobbies anymore. He watched movies or television, but sometimes became nauseous and dizzy afterward. He had trouble remembering whether a bill had been paid, and he was short-tempered with friends and family. She also described Winther appearing fearful in social situations and in crowds. He groomed himself, prepared easy meals in the microwave, and

---

[1] Notably, this assertion conflicted with her later observation that "sitting is challenging due to prostate prombles [sic] from his Manganism[.]" Tr. 231.

fed himself.  He went outside three or four times a month, and sometimes more if he had doctor appointments.  He usually did not drive alone.  He could no longer play his guitar.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  The ALJ referenced Mrs. Winther's testimony a handful of times in his opinion.  He stated, "Functionally, the claimant has not demonstrated the nature and severity of symptoms and limitations that he and his wife testified to before the [Department of Veterans Affairs] Appeals Board.  Even his wife reports that he continues to drive, pays bills, handles the checkbook, and functions at even greater levels and independence than the claimant alleges." Tr. 991.  Additionally, the ALJ wrote:

> I have also considered the third party report of the claimant's wife, Diana Winther.  She confirms the claimant's testimony of doing some laundry and loading the dishwasher.  She works full-time, 40-hours a week and therefore it appears that he maintains the household.  Mrs. Winther also reports the claimant has no difficulties with grooming and hygiene; goes out 3-4 times a week; drives; uses the computer; shops at stores and shops for groceries once a week, plus he is able to pay bills, handle a checkbook, and perform cash exchanges and receive the correct change in return.  In as much as his wife is reporting her observations of the claimant's behavior, in addition to the fact that her report reflects greater independence and functioning than even the claimant alleges, I find her report generally credible.

Tr. 999.

The ALJ misrepresented Mrs. Winther's third-party report.  Nothing in her report supports the ALJ's conclusion that Winther maintains the household; to the contrary, Mrs. Winther specifically noted she prepared most meals and maintained the apartment.  Her testimony is corroborated by Dr. Brischetto's report in which the doctor noted Winther:

Page 10 - OPINION AND ORDER

>  basically has his wife do many things for him.  He said that she organizes his pills.
>  She also writes down messages for him, reportedly.  She appears to do most of the
>  chores and cleaning at home, paying the bills and cooking.  He seemed fairly
>  dependent on her, and secondary gain issues, given all the limitations he reports
>  and the help he needs, may need to be a consideration.

Tr. 923.

Further, Mrs. Winther reported Winther left the house three or four times a *month*, not a *week* as the ALJ represented.  Indeed, the Winthers' reports are fairly consistent with each other; they both report television caused him problems (migraines in his report, nausea and dizziness in hers),[2] that Winther did some laundry, loaded the dishwasher, and could cook easy meals, the number of times he left the house (he said once a week, she said three or four times a month), and that Winther could listen to music but could no longer play the guitar.  They both consistently reported he could take care of his personal grooming, drive himself, go shopping (she said usually with company), and pay the bills.

The Commissioner points out Winther's hearing testimony describing his sitting limitations conflicted with his wife's report that all Winther could do during the day was sit and listen to music.  Although this is an inconsistency, it is not support for the ALJ's stated conclusion crediting Mrs. Winther's description of her husband's capabilities.  I cannot affirm the ALJ on a ground he did not invoke.  *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (citing *Stout*, 454 F.3d at 1054).

Alternatively, the Commissioner urges me to find the error harmless because the same reasons for finding Winther not credible would apply equally to his wife's opinion.  *Molina*, 674

---

[2]This is different from Winther's hearing testimony that he could not watch television for longer than twenty or thirty minutes due to back pain.  Tr. 1137.

F.3d at 1121-22. Among the reasons the ALJ gave for questioning Winther's credibility, which Winther does not challenge, include: Winther has not demonstrated the nature and severity of symptoms and limitations; lack of medical evidence supporting some of his complaints, including normal test results; questionable memory and cognitive test results that suggested he over-reported his symptoms; exaggerated statements at the hearing and elsewhere; failure to mention problems to doctors, such as trouble sitting or trouble holding his guitar; and a presentation with a "significant secondary gain flavor to it." Tr. 1000.

It is true that where the ALJ gives "well-supported reasons for rejecting the claimant's testimony" and those reasons apply equally to the lay witness testimony, the ALJ may discount the lay witness report for the same reasons. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (reasons for rejecting claimant's testimony can be equally germane to similar lay witness testimony). It is also true that failing to discuss lay witness testimony may be harmless where "the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117, 1122. Here, however, the ALJ did not fail to discuss the lay witness testimony, nor did the ALJ reject Mrs. Winther's report for the same reasons he discounted Winther's credibility. Rather, the ALJ credited Mrs. Winther's report and in doing so misrepresented her testimony. I decline to find his error harmless, particularly given the additional errors I discuss below.

II.     Medical Evidence

Winther challenges the ALJ's treatment of two medical sources: treating source Dr. Backman and examining source Dr. Schmitt.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n.2. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

A.      <u>Dr. Backman</u>

Dr. Backman gave four opinions over the course of her year-long treating relationship with Winther. The first, dated April 15, 2009, relied on the opinion of Dr. Coenen in diagnosing manganese poisoning and in opining that Winther was fully disabled and unable to work. Tr. 872. Prompted by Winther's attorney, Dr. Backman gave her second opinion on September 2, 2009, opining that "fatigue, pain, numbness, [and] memory loss" affected Winther's ability to work. Further, in response to the attorney's inquiry whether Winther would likely miss two or more days of work per month "as of March 2006 when Dr. Coenen diagnosed magnesism [sic],"

she answered "yes." Tr. 930. A week later, again in response to Winther's attorney's inquiry, Dr. Backman answered "yes" to the question whether Winther would miss four to eight hours per week of work due to pain and other symptoms. Tr. 931. Finally, on April 15, 2010, Dr. Backman issued a nearly identical letter to the one she had written exactly a year before reiterating her diagnosis of manganese poisoning. Tr. 936.

In finding the manganese poisoning a non-severe impairment, the ALJ relied on the testifying medical expert's opinion, as well as normal neurological examination findings and other normal test results, the absence of records showing manganese poisoning during Winther's military service, and the physicians' over-reliance on Winther's subjective reports. Specific to Dr. Backman, the ALJ gave her opinion letter of April 15, 2009 no weight for all of these reasons. He reiterated that Dr. Backman's treatment notes did not support a diagnosis of manganese poisoning. After finding Winther not entirely credible, a conclusion not challenged by Winther, the ALJ summarized, "As for the opinion evidence, for reasons detailed above, I give little weight to the opinions of Dr. Coenen, D.O. Backman, and to the DVA Appeals Rating Decision of February 5, 2013." Tr. 1000.

Winther contends the ALJ failed to address Dr. Backman's September 2009 opinions; he does not challenge the ALJ's rejection of Dr. Backman's opinion diagnosing manganese poisoning. The Commissioner concedes the ALJ did not directly address the September 2009 interrogatories but argues his failure to do so is harmless since it is reasonable to read both September opinions as arising in the context of Winther's alleged manganese poisoning, a diagnosis which the ALJ rejected.

The ALJ was required to give specific and legitimate reasons for rejecting this treating source's opinion.³ While the ALJ gave reasons to reject Dr. Backman's opinions regarding Winther's manganese poisoning diagnosis, he failed to address the functional limitations identified by Dr. Backman as well as the list of impairments she opined would preclude Winther from working.

The Commissioner urges me to find the ALJ's error harmless because she says I can "reasonably . . . discern[]" the ALJ's path, "even if the [ALJ] explains [his] decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 798 F.3d 749, 754 (9th Cir. 2015). It is true the ALJ rejected Dr. Backman's diagnosis of manganese poisoning, and supported that rejection with specific and legitimate reasons that Winther does not challenge. The Commissioner asks me to "assume" the functional limitations Dr. Backman identified in the September 2009 interrogatories were those she deemed associated with manganese poisoning. Def.'s Mem. 6. I decline the Commissioner's invitation. Importantly, nothing in the September 2009 interrogatories connects the limitations Dr. Backman identified with manganese poisoning; they could have been functional limitations associated with another diagnosis such as fibromyalgia, which the ALJ accepted as one of Winther's severe impairments and which Dr. Backman continually lists among Winther's past diagnoses. While Dr. Backman's September 2009

---

³Contrary to Winther's assertion, because Dr. Backman's opinion was contradicted by state agency consulting physicians Michael Stevens, Ph.D., Carol Deatrick, Ph.D., and Ronald Kline, M.D., the ALJ was only required to give specific and legitimate reasons to reject Dr. Backman's opinions. Winther contends Dr. Backman's opinion that Winther would miss work is uncontradicted, but both Dr. Deatrick and Dr. Stevens opined Winther would be only moderately limited his ability to complete a regular workday and work week, and Dr. Kline identified "little functional loss." Tr. 62, 770, and 761.

opinions are subject to question,[4] I cannot confidently conclude on this record that the ALJ's error is harmless. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (harmless error doctrine available even where an ALJ neglects to discuss view of treating source, but court must confidently conclude no error).

      B.      <u>Dr. Schmitt</u>

The ALJ failed to address the opinion of Dr. Schmitt, a VA compensation and pension examiner, who continued to diagnose Winther with depressive disorder and added a diagnosis of panic disorder. Dr. Schmitt also concluded Winther was "unemployable due to his service connected depression." Tr. 946. Although Dr. Schmitt reported that his recommendation was based on his review of the medical records, he relied heavily on his interview with Winther. Objectively, Winther demonstrated no impairment of thought process or communication, no delusions or hallucinations, his behavior was appropriate, he was oriented to person, place, and time, and rate and flow of speech was normal. Nevertheless, Dr. Schmitt found Winther unemployable "due to the veteran's description that he has severe memory problems at work, has conflicts with other employees due to irritability, and in general has extensive fatigue during the day, due to sleep problems at night." Tr. 944.

---

[4] Notably, Dr. Backman first opined a diagnosis of manganese poisoning in April 2009, and she *reiterated* that diagnosis a year later in April 2010, suggesting she continued to believe manganese poisoning was Winther's primary medically determinable impairment. *See also* Tr. 845, 843, 838 (April 2009 appointments identifying fatigue caused by manganese poisoning as the impairment keeping Winther from working). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (2004) (ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings"); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (permissible to reject check-off reports from physicians that do not contain any explanation of the bases for the conclusions).

Again, the Commissioner asks me to find the ALJ's error to be harmless because Dr. Schmitt found Winther to be "unemployable"–a determination left to the agency–based on Winther's subjective reports. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (A physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible." ). Since I reverse and remand for other errors made by the ALJ, I direct the ALJ to properly address Dr. Schmitt's opinion.

III.     Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court has discretion to credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Alternatively, the court can remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

As the Commissioner points out, the ALJ found Winther not entirely credible–a finding which he does not challenge. Mrs. Winther's lay report was very similar to Winther's testimony and subject to the same doubt about its value given Winther's credibility problems. Further, since there are reasons for the ALJ to properly disregard the opinions of both Dr. Backman and Dr. Schmitt, and since there is other medical evidence in the record supporting the ALJ's

conclusion that Winther is not disabled (opinions which Winther did not challenge[5]), I remand for further consideration of the opinions of Dr. Backman and Dr. Schmitt. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (may be evidence to disregard testimony of treating physician); *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (other medical evidence seems to support the ALJ's decision that claimant is not disabled); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("credit as true" rule is discretionary). Given the ALJ's legal errors, but where the record "is uncertain and ambiguous," the correct action is a remand to the ALJ. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014).

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) as explained above. Judgment will be entered.

IT IS SO ORDERED.

DATED this    22nd    day of October, 2015.


　　　　　　　　　　　　　　　　　　/s/ Garr M. King
　　　　　　　　　　　　　　　　　　Garr M. King
　　　　　　　　　　　　　　　　　　United States District Judge

---

[5] Anita Goel, M.D., diagnosed fibromyalgia, but noted Winther's good pain control with 1-1/2 Endocet a day. Tr. 1208. Dr. Brischetto thought Winther could work despite his adjustment disorder.